Rollins, J.
This is an action of contract in which the plaintiff, a real estate broker seeks to recover a commission of $1075 for procuring a customer for the defendant’s real estate on Main -Street, Norwell, Massachusetts.
The evidence introduced at the trial tended to show the following facts:
Prior to April 3, 1945, one Parker, a salesman and agent of the plaintiff, and who had full authority to represent him, obtained permission to show the real estate to customers.
Parker showed the property to Ebed L. Ripley, hereinafter called Ripley, and his Mother.
On or about this date Parker advised the defendant that the Ripleys would pay $18,000 for the property. The de *256 fendant inquired what the commission would be and Parker told him 6% on the first $10,000 and 5% on the balance.
The defendant refused the offer but said he would sell for $19,500.
A few days later Parker advised the defendant “his people” would pay $19,500.
On or ábout April 18, 1945 Parker obtained from the defendant a description of the property by metes and . bounds, and prepared a purchase and sale agreement in the usual form.
' The agreement provided that the defendant was to sell and the Ripleys to buy the property in question for $19,500, $500 to be paid April 18,1945, $500 on June 1,1945 and the balance upon the delivery of the deed which was to be on or before July 16, 1945 and the defendant was to pay the plaintiff a broker’s commission at the rate hereinbefore stated.
Parker submitted this agreement. to the defendant in duplicate. The defendant did not know the Ripleys and he asked Parker how they were going to raise the money to pay for the property. Parker told him that Mrs. Ripley owned a house in Hingham upon which she could raise $10,000 and that Ripley could finance the balance.
The defendant then asked Parker if the property was sold and upon the assurance that it was and now off the market, the defendant and his wife signed the agreement in duplicate and Parker took these away with him.
• Parker secured the execution of the agreement in duplicate by Ripley, but not by his Mother: He delivered one copy to the defendant. It does not appear from the findings of fact or the Report when this was done.
The defendant did not examine his copy of the agree- ■ rnent when it was delivered to him and could give no definite date as to when he first discovered that only' Ripley *257 had signed it. The Court, however, found that the defendant became charged with this knowledge on or about July 2, 1945.
Ripley made the two $500 payments to the plaintiff. The record does not disclose when they were made.
The defendant told Parker that he was buying another house and would like to have the $1000 for that purpose. Parked advised that he would first have to obtain authority from Ripley to turn this money over to him.
Parker obtained this authority from Ripley, and the plaintiff paid the $1000 to the defendant. When this was paid does not appear.
On or about July 2, 1945, the defendant received from some source a deed prepared by Ripley’s attorney wherein Ripley alone was named as sole grantee. The defendant had his wife sign this deed, and, upon the advice of Parker, he went to this attorney’s office ready to sign and deliver the deed upon the receipt of the balance of the purchase price. The defendant waited at this office but neither Ripley nor his Mother appeared to carry out the transaction.
Later the defendant sold his real estate to another person.
The defendant testified he had retained the $1000 paid by Ripley, that he had not returned it to the plaintiff nor to Ripley, nor did he intend to do so for the reason that “someone who breaks his agreement is not entitled to get his money back.”
The plaintiff duly filed 12 requests for rulings. The judge allowed request No. 2. He allowed Nos. 1, 3, 5, 6 and 7 as correct statements of law. No. 8 was denied, “the evidence shows that plaintiff represented he procured two buyers, not one.” No. 9 was denied, “as to the defendant there was not a meeting of minds, whether or not he could en *258 force as against Ripley is not material.” Nos. 10, 11 and 12 were denied and No. 4 was waived by the plaintiff.
Among the findings of fact made by the trial judge are the following:
“When Parker advised the defendant that Ripley and his Mother were customers who were interested in buying the property and when the defendant asked Parker how they were going to finance it arid Parker advised that Mrs. Ripley had a house in Hingham upon which she could raise $10,000, and when Parker prepared the agreement and put Mrs. Ripley’s name in it as one of the buyers and when he obtained the defendant’s signature to that agreement, Parker knew that Mrs. Ripley had no intention of becoming a buyer or to become bound under any written agreement or otherwise in the purchase of this property and that her only intention was to contribute financial assistance to Ripley so that he could make the purchase.
Ripley was a witness in this case and he testified that he was ready, willing and able to buy this property and such testimony was not rebutted by direct evidence, but in view of the picture of Mrs. Ripley in this case the Court finds that without her help Ripley was not financially able to purchase either at the time the offer was made, the agreement signed, or on July 2, 1945, (really July 16, 1945), the date apparently fixed for the delivery of the deed.
In the first instance Parker was the representative of the Ripleys and as such he negotiated the matter for them with the defendant.
During the transaction he became in a dual capacity the representative of both sides, looking however to be compensated only from the defendant by way of commission. In this dual capacity and with full knowledge he misrepresented Mrs. Ripley’s position to the defendant. On Parker’s representation that both Ripley and his Mother were the buyers, and of their ability to pay, that the property was sold and off the market, the defendant signed the agreement and agreed to pay the plaintiff a commission. Such misrepresentations were material and affected the action of the defendant *259 and by reason of stick tke plaintiff is not entitled to recover.
The Court rules that the retention by the defendant of the $1000 after acquiring full knowledge of tke situation (July 2, 1945) does not constitute a ratification of Parker’s acts and does not entitle the plaintiff to recover.”
The Court found for the defendant.
The plaintiff claiming to be aggrieved by the Court’s refusal to give the rulings requested in the plaintiff’s requests for rulings numbered 8, 9,10, 11 and 12 and further to be aggrieved by the ruling of law given by the Court relative to the retention of the $1000 by the defendant, hereinbefore quoted, this case is reported to this Appellate Division for determination.
The defendant signed, in duplicate, an agreement wherein he agreed to sell, and Ripley and his Mother agreed to buy the real estate in question, upon terms therein defined. The duplicate agreements were given to Parker to obtain the signatures of Ripley and his Mother. One of the duplicate agreements signed by Ripley and not by the Mother was returned to the defendant by Parker.
Upon its receipt it was the duty of the defendant to examine it. Grace v. Adams, et als., 100 Mass. 505, 507.
If he had then read it he would have observed that only Ripley signed it and that it was not signed by the Mother.
The return to the defendant of the Agreement of Purchase and Sale by Ripley, signed only by him, constituted in effect a counter offer to the defendant. Ripley said, in effect, I alone will purchase the real estate upon the terms set forth in the written agreement if you will sell it to me alone on those terms.
It was open to the defendant to reject this counter offer or to accept it. He could accept it expressly or he could *260 impliedly accept it by his subsequent conduct and dealings. An offer may be accepted by conduct and acts as well as by words or writing. Greaney v. McCormack, 273 Mass. 250, 252, 253. He certainly never rejected it. He never returned his copy of the agreement, nor did he ever notify Eipley or Parker that he did not intend to be bound by it since Mrs. Eipley had not signed it. On the contrary, after he had full knowledge that Mrs. Ripley, the Mother, had not signed the agreement, he retained his copy of it, he retained the $1000 paid on account of the purchase price, with the significant comment that “some one, (meaning Eipley) who breaks his agreement is not entitled to have his money back,” and, finally, at the time appointed for the delivery of the deed he was present with a deed in which Eipley was named as the only grantee, ready to sign and deliver the deed to Eipley upon receipt of the balance of the purchase price.
All of these things demonstrate that he accepted the “counter offer” and ratified the acts of Parker as agent in securing Eipley as a customer.
The agreement of purchase and sale between the defendant and Eipley became a valid contract binding upon both parties.
Since this is so, it was no longer necessary that the plaintiff prove in this action, that Eipley, the purchaser, was able, ready and willing to pay the purchase price. By becoming party to this agreement the defendant accepted Eipley as a customer ready, able and willing to purchase the property. McCarty v. Reid, 237 Mass. 371, 372. Roche v. Smith, 176 Mass. 395, 397. Ward v. Cobb, 148 Mass. 518.
Accordingly we reach the conclusion that the plaintiff, through his agent Parker, produced a customer able to purchase the defendant’s real estate and who signed a valid written agreement to do so. Having done this the plaintiff *261 became entitled to Ms commission. See cases last above quoted. The misrepresentation made by Parker to the defendant that both Ripley and his Mother were to sign the purchase and sale agreement became immaterial when the defendant, with full knowledge that the Mother had not signed, elected to make the agreement with Ripley alone and take advantage of its provisions.
The trial court materially erred in refusing to give the rulings requested and in giving the ruling of law relative to the retention of the $1000.
In view of the fact that this case has been fully tried and that upon the evidence the plaintiff is entitled to a judgment, the order must be, Finding for the defendant vacated. Finding to be entered for the plaintiff for damages in the amount of $1075 and interest from the date of the plaintiff’s writ, and for costs.